ALFRED J. LOY, d/b/a ARROW MOVING & STORAGE COMPANY, Plaintiff-Appellee, *v.* GERALD T. BOOTH, Defendant-Appellant.

(No. 72-286;

Second District—February 15, 1974.

John F. Grady, of Waukegan, for appellant.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

Defendant appeals from a judgment of the Circuit Court of Lake County entered against him in the amount of $10,261.97, being $8363.11 principal plus $1898.86 in interest.

· As these same parties have been before this court twice before in actions arising out of the same transaction (*T. R. Booth & Co., Inc. v. Loy* (1968), 100 Ill.App.2d 333, 241 N.E.2d 315; *T. R. Booth & Co., Inc. v. Loy* (1970), 128 Ill.App.2d 383, 262 N.E.2d 19), the facts will be related only briefly.

In June of 1965 the defendant, Gerald T. Booth, sole stockholder of T. R. Booth & Co., Inc., entered into an arrangement with plaintiff, Alfred J. Loy, for the storing of certain personal property owned by T. R. Booth & Co., Inc., in a portion of Loy's warehouse. Subsequently, some of this property was found to be missing under circumstances suggesting theft or burglary. T. R. Booth & Co., Inc., sued Loy for the value of the missing property under a theory of bailment and secured a judgment against Loy on July 11, 1967. Loy served notice of appeal on October 24, 1967, but did not file a *supersedeas*. On December 20, 1967, as a result of a garnishment proceeding the judgment was paid in full, plus interest. Gerald T. Booth, the president and sole share owner of T. R. Booth & Co., Inc., deposited the net amount of the judgment (after attorney's fees) in the corporation's bank account and then, within a day or two, withdrew $4000 from the corporation's bank account and on January 7, 1968, withdrew $5000 from the corporation's bank account.

In October of 1968 the judgment against Loy was reversed without being remanded on the ground that no bailment was created by the transaction between the parties. Thereupon, Loy filed a petition in the trial court seeking restitution of the amount of the judgment he had paid, plus interest. T. R. Booth & Co., Inc., filed a counterclaim to this suit, this time alleging negligence on the part of Loy, and upon the counterclaim being dismissed in the trial court, Booth, Inc., appealed. This appeal was also decided against Booth, Inc. (*T. R. Booth & Co., Inc. v. Loy* (1970), *supra*), on the ground that no negligence was shown by the evidence.

The trial court then held the plaintiff, Loy, was entitled to recover

the amount of the judgment erroneously entered against him in the original suit, plus interest at 5% from the date the judgment was paid. The plaintiff in his efforts to collect this judgment discovered that T. R. Booth & Co., Inc., had no assets, so plaintiff sued and recovered a judgment against Gerald T. Booth, individually, as the sole shareholder of T. R. Booth & Co., Inc., for the principal amount of the original judgment, plus interest.

Defendant raises two points in this appeal: (1) If any debt is owed to the plaintiff it is owed by the corporation. T. R. Booth & Co., Inc., which is a separate and distinct legal entity from the defendant and there is no justification for going behind the corporate veil in order to hold the sole stockholder on the corporation's debt, and (2) in any event, the circumstances do not warrant the assessment of interest against the defendant because this is at most a simple debt, not accompanied by the considerations which sometimes prompt a court of equity to allow interest.

The main point at issue here is whether the circumstances justify "piercing the corporate veil" to follow the judgment funds from the corporation into the hands of the defendant, under the theory that he is the alter ego of the corporation. None of the cases cited by either party seem to us to be sufficiently in point as to their facts to be persuasive. *Brook v. Oberlander* (1st Dist. 1964), 49 Ill.App.2d 312, 199 N.E.2d 613, cited by appellant, merely held that where an offer is made to a partnership and accepted by a corporation, the offeror is not bound by the acceptance even though the partnership owned all of the corporate shares because he has a right to choose with whom he will do business. This is too obvious to require further comment and is not a precedent for refusing to go behind the corporate veil in a proper case involving a sole stockholder. *Divco-Wayne Sales Corp. v. Martin Vehicle Sales, Inc.* (1st Dist. 1963), 45 Ill.App.2d 192, 195 N.E.2d 287, simply holds that, where there is substantial difference in function and organization between a parent corporation and its financing subsidiary, the parent corporation cannot be said to be the alter ego of the subsidiary, so as to disregard its separate identify. (See also *Chicago Budget Rent-A-Car Corp. v. Maj* (1972), 5 Ill.App.3d 265, 282 N.E.2d 155.) While the other cases cited by appellant are instances where the "corporate veil" was not pierced, their facts are too different from the case under consideration to be of any help in reaching a decision on the point involved.

Likewise, the appellee cites several cases which we do not feel are sufficiently similar in their facts to be helpful. *Caspers v. Chicago Real Estate Board* (1965), 58 Ill.App.2d 113, 206 N.E.2d 787, was a case of malicious prosecution and the holding in that case was simply that the

plaintiff as the sole stockholder was the individual actually injured rather than the corporation and theoretically could bring the action, although the case was actually dismissed on other grounds. The case is cited for the general language, quoting *Illinois Interior Finish Co. v. Poenie* (1934), 277 Ill.App. 554, 566,

> "In such cases as this the courts will not permit themselves to be blinded nor deceived by mere forms of law, but, regardless of the fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

More helpful in the present situation is the case of *Tilley v. Shippee* (1958), 12 Ill.2d 616, 147 N.E.2d 347, cited by the appellee. The plaintiff and the defendant entered into a joint venture whereby they set up a corporation to own and operate certain personal property and equipment. However, the land on which the operation was to be conducted was put in the name of defendant and his wife and the plaintiff got no title to it but only shares in the corporation. In holding that the plaintiff could go beyond the corporation and assert an interest in the land under the theory of trust, the court said, p. 623:

> "These subsequent corporate transactions do not appear to be decisive of the issue of whether or not a resulting trust was created * * * the trial court, in the exercise of its equitable powers, can penetrate behind the screen of a corporate entity or other forms of business in order to apply the equitable maxim that equity will look through the forms to the substance of a transaction in order to ascertain the relationship of the parties."

■■ Nevertheless, as Justice Holmes remarked in considering the case of *Klein v. Board of Tax Supervisors* (1930), 282 U.S. 19, 24, 75 L.Ed. 140, 143: "But it leads nowhere to call a corporation a fiction. If it is a fiction, it is a fiction created by law with intent that it should be acted on as if true." Therefore, we must bear in mind that while the courts will sometimes ignore the existence of the corporation in order to do justice, the general rule is that a corporation is deemed an entity separate and distinct from its stockholders and a sole stockholder is not the owner of the corporate property. 13 I.L.P., pp. 263-265; *Earp v. Schmitz* (1948), 334 Ill.App. 382; *Brook v. Oberlander*, (1st Dist. 1964), 49 Ill.App.2d 312, 199 N.E.2d 613.

■■■ What we must decide, therefore, is whether the circumstance of this particular case are such as to bring it within the exceptions to the general rule. We think they are. The defendant here was the sole stockholder and was president and had complete management and control of the corporation. He apparently treated the corporation's bank account

as his own as he withdrew $5000 of the money from the judgment the day after it was deposited in the corporation's bank account and less than three weeks later he withdrew another $4000 which included all of the balance of the judgment funds. There is no record or claim that this was done pursuant to any resolution or authorization pursuant to a meeting of any kind on behalf of the corporation. Indeed, such a meeting would have been a sham and a waste of time, such was the closeness of the connection between the defendant and the corporation. While the defendant denies the money thus withdrawn was for his own personal use, his denial is based on a claim that the corporation owed him money and his deposition states that the corporation's bank account was not restored and that the corporation was subsequently reduced to a mere legal entity with a bank account of less than $30. It is to be noted that at the time the defendant withdrew the funds from the corporation's bank account he was well aware that an appeal of the judgment was pending and he is chargeable with knowing that in accordance with settled principles of Illinois law, when a trial court's judgment is reversed, the parties are restored to their original positions and if the plaintiff in the lower court has derived any benefit from the judgment, he must make restitution. (*First National Bank v. Road District No. 8* (1945), 389 Ill. 156, 58 N.E. 2d 884.) It is entirely inequitable to allow the defendant to render the corporation penniless so that it is no longer in a position to repay the money it erroneously received and then to say to the plaintiff when he seeks restitution, "Look to the corporation, it owes the money, I don't." While the court will not lightly disregard the law's fiction of a separate corporate identity, there are cases where they can and will do so to prevent manifest injustice. We believe this to be such a case. We hold, therefore, that the plaintiff is entitled to follow the judgment funds into the hands of the defendant and on this point we affirm the judgment of the lower court.

■■ The trial court allowed interest at 5% on the amount of the original judgment erroneously awarded to the defendant. The defendant contends this was in error as the collection of the erroneous judgment simply placed the defendant and plaintiff in the position of debtor and creditor, and without any prior agreement and in the absence of a statute covering the particular circumstances, Illinois law does not provide for the payment of interest.

■■ Such is the general rule. (*Weiland Tool & Manufacturing Co. v. Whitney* (1968), 100 Ill.App.2d 116, 241 N.E.2d 533; *Watson Lumber Co. v. Guennewig* (1967), 79 Ill.App.2d 377, 226 N.E.2d 270. See also Ill. Rev. Stat. 1971, ch. 74, par. 2.) However, it is well established that courts of equity in Illinois will allow interest without any agreement

therefor in advance, where the circumstances require it in order to do justice between the parties. (*Duncan v. Dazey* (1925), 318 Il. 500; *McKey v. McCord* (1921), 298 Ill. 566.) These cases, however, usually involve actual or constructive fraud. In the instant case the defendant, Booth, obtained the funds pursuant to a valid judgment and he had a right to retain them until final adjudication of his claim. There was neither fraud nor vexatious delay involved in his doing so, especially since the action to recover the funds was brought against him personally while actually the funds had been collected by the corporation. While we hold the plaintiff can disregard the corporate veil in this case, this does not mean the defendant was not within his rights to invoke it. The plaintiff by his failure to procure a *supersedeas* bond, invited the situation which occurred here and in the absence of fraud or vexatious delay, we see no inequity in limiting his recovery to what he actually paid out.

The judgment of the trial court is affirmed as to that part of the judgment awarding the plaintiff the principal sum of $8363.11 and reversed as to that part of the judgment awarding interest to the plaintiff.

Affirmed in part; reversed in part and remanded with directions to enter judgment for the principal amount of $8363.11 plus costs of suit.

Affirmed in part, reversed in part and remanded.

T. MORAN, P. J., and GUILD, J., concur.