EDWARD J. SNYDER III, Plaintiff-Appellee, v. ROBERT N. DUNN, Defendant-Appellant.

First District (1st Division)    No. 1—92—3927

Opinion filed August 8, 1994.

Law Offices of Thomas W. Duda, of Buffalo Grove (Thomas W. Duda, of counsel), for appellant.

Daniel C. Meenan, Jr., P.C., of Chicago (Daniel C. Meenan, Jr., of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Robert N. Dunn, M.D., appeals a judgment entered against him after a bench trial in which the trial judge found that Dr. Dunn and plaintiff, Edward J. Snyder, III, M.D., had engaged in the practice of medicine together under an oral partnership and that Dr. Dunn was liable to Dr. Snyder for partnership profits.

In August 1986, Dr. Dunn maintained a medical practice at 10555 West Cermak Road in Westchester, Illinois. Dr. Dunn maintained the practice as a personal corporation, of which he was the chairman, sole shareholder, and employee. Around this time, Dr. Dunn and Dr. Snyder were introduced by a mutual friend. Dr. Snyder had recently completed medical school and was seeking practice opportunities. Dr. Dunn offered to help Dr. Snyder get onto the staff at area hospitals and to allow Dr. Snyder to work out of his office with full use of his equipment and employees.

The testimony of the two doctors diverged as to what Dr. Snyder was to do in exchange; however, the trial judge chose to credit Dr. Snyder's theory of the case. Dr. Snyder testified that Dr. Dunn asked him to deposit all of the fees he received from patients he saw at the Cermak office into Dr. Dunn's practice account, which was, unknown to Dr. Snyder, Dr. Dunn's corporate account. Dr. Snyder had no privileges regarding this account. According to Dr. Snyder, from the money deposited into the account by him, Dr. Dunn was to keep 35% to defray overhead. In addition, Dr. Snyder's medical malpractice costs would be deducted from the practice account. According to Dr. Snyder, he was entitled to any remaining money. Dr. Snyder also testified that he was permitted to keep all of the income generated from work he performed outside the Cermak office.

Dr. Dunn testified that he had not told Dr. Snyder to deposit all of his fees into the practice account. Rather, he told him to pay him 35% of his fees for overhead, implying that he simply assumed that that was the amount that Dr. Snyder had been depositing.

Dr. Snyder moved into Dr. Dunn's office in August 1986 and began depositing all of his fees into Dr. Dunn's practice account. Dr. Snyder used Dr. Dunn's office, equipment, and office staff. Each doctor saw only his own patients. The two did not file a certificate of partnership and did not hold themselves out to the public as a partnership. They did not file a partnership tax return; rather, each filed his own taxes. The two doctors shared billing sheets, each having his name listed separately at the top. As far as costs of the business, Dr. Snyder testified that he was responsible for the 35% agreed to and nothing more. Thus, if the medical practice suffered losses, Dr. Snyder was not responsible.

After several months, Dr. Snyder convinced Dr. Dunn to move the practice across the street into another office on Cermak Road, sharing space with a third doctor, who held the lease at 10560 West Cermak Road. In conjunction with the move, Dr. Dunn and Dr. Snyder purchased the third doctor's equity in his medical equipment. In order to finance this purchase, Dr. Dunn and Dr. Snyder took out a

joint loan amounting to $20,000; Dr. Dunn wrote a $10,000 check drawn on the practice account; and Dr. Snyder drew a personal check for $5,000.

According to Dr. Snyder, in June 1987, Dr. Dunn withdrew $13,000 from the practice account to finance a trip to Europe. As a result, the account contained insufficient funds to pay the expenses of the practice, including malpractice premiums. At this juncture, Dr. Snyder decided to begin placing his fees into a separate account. Dr. Snyder also prepared an accounting of the money he had deposited into Dr. Dunn's account. Around March 1988, Dr. Dunn moved to Arkansas, but did not reimburse Dr. Snyder the funds remaining after expenses. Dr. Snyder filed suit against Dr. Dunn to recover the money.

The trial court found that Dr. Snyder and Dr. Dunn were partners based solely, apparently, on his finding that the money remaining from the fees that Dr. Snyder deposited into Dr. Dunn's corporate account, after subtracting 35% for overhead and malpractice, was "profits" of the partnership. The trial court therefore entered an award for Dr. Snyder for $34,155.

Dr. Dunn claims that the trial judge erroneously found that a partnership existed between Drs. Dunn and Snyder. The burden of establishing the existence of a partnership is upon the party asserting its existence. Ordinarily such proof need only be by a preponderance of the evidence; however, "where the evidence contains writings of the parties that distinctly indicate a relationship other than a partnership, the assertion that a partnership exists must be based on very clear and convincing evidence." (*Seidmon v. Harris* (1988), 172 Ill. App. 3d 352, 357, 526 N.E.2d 543.) Here, the record does not contain any writings that contradict a partnership. Thus, Dr. Snyder need only prove his contention by a preponderance of the evidence. *Peterson v. Prince* (1981), 102 Ill. App. 3d 220, 430 N.E.2d 297.

Where, as here, the parties have not entered into a written agreement defining the alleged partnership, we review the intent of the parties, as well as the facts and circumstances surrounding the alleged formation, to ascertain whether a partnership was formed. We will not disturb the trial court's decision unless it is against the manifest weight of the evidence. *Sajdak v. Sajdak* (1992), 224 Ill. App. 3d 481, 487, 586 N.E.2d 716.

●1 Under the Uniform Partnership Act (Ill. Rev. Stat. 1987, ch. 106$^1$/2, par. 1 *et seq.*) (the Act), a partnership is an association of two or more persons to carry on, as co-owners, a business for profit. (Ill. Rev. Stat. 1987, ch. 106$^1$/2, par. 6(1). See also *Maloney v. Pihera* (1991), 215 Ill. App. 3d 30, 42, 573 N.E.2d 1379.) Under the Act (Ill. Rev.

Stat. 1987, ch. 106$^{1/2}$, par. 7(4)), the sharing of profits constitutes *prima facie* evidence of the existence of a partnership; however, the sharing of losses is not specified as a prerequisite to the recognition of a partnership. (*Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 120 N.E.2d 546.) In addition to profit sharing, to determine the existence of a partnership, the court considers such factors as the manner in which the parties have dealt with each other, the mode in which each has, with the knowledge of the other, dealt with persons in a partnership capacity and whether the alleged partnership has advertised using the firm name. (*Seidmon*, 172 Ill. App. 3d at 357.) Furthermore, such factors as whether the parties have filed a partnership certificate with the county clerk, in the event the firm name does not include the true name of the persons transacting such partnership business, and whether they have carried telephone listings using the firm name are also of import. *Maloney*, 215 Ill. App. 3d at 42-43.

●2 Based on the above factors, the evidence presented by Dr. Snyder failed to establish a partnership. As the facts indicate, Drs. Dunn and Snyder did not hold themselves out as a partnership. They filed separate tax returns; they had no partnership certificate on file with the county clerk, and they did not maintain a joint checking account or joint business cards. Indeed, on his application for malpractice insurance, Dr. Snyder stated that he was a sole practitioner. The only transaction between Dr. Snyder and Dr. Dunn that had partnership ramifications was the joint loan they took out to purchase office equipment.

The sole basis upon which the trial court found a partnership was that the money Dr. Snyder deposited into Dr. Dunn's practice account, less 35% overhead and less malpractice premiums, constituted "profits" of the partnership. In *Maloney v. Pihera* (215 Ill. App. 3d at 43), this court found that the parties' agreement to evenly divide the proceeds from the rental of certain property was insufficient to establish the sharing of profits. Likewise, here, the money to which Dr. Snyder lays claim is not a "profit." Rather, it is simply his money, which he did not wish to share with anyone. Even assuming the money was "profits," "[t]he sharing of this nominal income alone is insufficient evidence that a partnership was created. Mere participation in the profits of a business [,although *prima facie* evidence of a partnership,] does not create a partnership." *Pihera*, 215 Ill. App. 3d at 43.

Based on the trial court's findings that Dr. Snyder's account of events was the more credible, Dr. Snyder appears entitled to recompense. This court, however, has recently stressed, in reversing a finding of the existence of a partnership, that "a remedy does not lie

by fictitiously creating a partnership where none exists." (*Sajdak*, 224 Ill. App. 3d at 489.) In *Pihera*, the court held that if, from the evidence, it appears that the plaintiff is entitled to a remedy, although not via partnership law, he should be permitted, pursuant to section 2—616(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—616(c)), to amend his pleading to conform to the evidence. In *Pihera*, the court noted that "[a]n action for money had and received is maintainable where defendant has received money which in equity and good conscience belongs to the plaintiff." (See *Pihera*, 215 Ill. App. 3d at 45 (affirming trial judge's post-trial decision to allow plaintiff who could not establish partnership to amend complaint to state claim for unjust enrichment).) Under the Practice Act's provision of supervisory authority (134 Ill. 2d R. 366(a)(5)), this court may "enter *** any order that ought to have been *** made." Thus, we remand this case to enable Dr. Snyder to amend his complaint to state a claim for unjust enrichment.

However, before Dr. Snyder may maintain such a claim, he must overcome Dr. Dunn's assertion that Dr. Snyder sued the wrong party from the outset. Prior to trial, Dr. Dunn had filed a motion to dismiss the case arguing that since he entered into his relationship with Dr. Snyder as an employee of the corporate entity, Robert N. Dunn, M.D., Ltd., Dr. Snyder was required to sue the corporation. Dr. Snyder responded that he did not wish to sue the corporation because he and Dr. Dunn had engaged in an independent partnership as individuals. The trial court denied Dr. Dunn's motion to dismiss, apparently under this theory, and the trial proceeded. Because we have rejected the trial court's finding that Dr. Snyder and Dr. Dunn engaged in a partnership, the trial court must yet determine whether Dr. Snyder may sue Dr. Dunn, individually, for money received by the corporate entity, Robert N. Dunn., Ltd.

A corporation is an entity separate from its shareholders, officers, directors, and employees in that these parties cannot generally be held liable for the debts or obligations of the corporation. (*Melko v. Dionisio* (1991), 219 Ill. App. 3d 1048, 1063, 580 N.E.2d 586.) The corporate form may be disregarded only when a court can conclude that the corporation is merely the alter ego or business conduit of a dominant personality. *Melko*, 219 Ill. App. 3d at 1063.

Where a person seeks to pierce the corporate veil to reach the dominant individual, he must show that "(1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity." (*Melko*, 219 Ill. App. 3d

at 1063.) In order to establish a unity of interest, we look to numerous factors, including: (1) whether the corporation is inadequately capitalized; (2) whether the dominant individual has failed to observe corporate formalities in conducting his business; and (3) whether corporate funds have been commingled with personal funds. *Melko*, 219 Ill. App. 3d at 1063.

If Dr. Dunn has interposed the defense of the corporate veil merely to deprive Dr. Snyder of a remedy, Dr. Snyder is permitted to sue the individual. (*Caspers v. Chicago Real Estate Board* (1965), 58 Ill. App. 2d 113, 117, 206 N.E.2d 787.) However, we cannot make such a determination, although the record contains allegations which indicate that this may be an appropriate case in which to ignore the corporate fiction. The record includes Dr. Snyder's assertion that Dr. Dunn, in dealing with Dr. Snyder, did not distinguish between himself and the corporate entity. Moreover, Dr. Snyder alleged that Dr. Dunn used corporate funds to take a personal vacation. In addition, to the extent that Dr. Snyder was not an employee of the corporation, the fact that Dr. Dunn told him to deposit his money into a corporate account without informing him that he was so doing indicates a potential commingling of funds. However, these are mere allegations, untested by the fact-finding process. We leave the trial judge to determine the veracity of these allegations.

Reversed and remanded for further proceedings.

CAMPBELL, P.J., and MANNING, J., concur.