In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 06-3386 & 06-3447

MITCH NOCULA, an individual, and
TOOLING SYSTEMS INTERNATIONAL
CORPORATION, an Illinois Corporation,

*Plaintiffs-Appellants,*

*v.*

UGS CORPORATION, a Delaware Corporation,
and UGS SP. Z O.O., a corporate body in the
Republic of Poland,

*Defendants-Appellees.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5275—**Robert W. Gettleman**, *Judge.*

_____

ARGUED MARCH 26, 2007—DECIDED MARCH 24, 2008

_____

Before ROVNER and SYKES, *Circuit Judges.*[Œ]

---

[Œ] This appeal was initially heard by Circuit Judges Rovner, Williams, and Sykes. While the case was under advisement, Judge Ann Claire Williams withdrew from participation and took no part in the opinion.

SYKES, *Circuit Judge.* Mitch Nocula is the sole share-holder of two corporations: Tooling Systems International Corp. ("TSI"), an Illinois company that takes orders for the manufacture of tools and dies, and P.Z. Alucon Sp. z o.o. ("Alucon"), a Polish corporation that is one of TSI's primary subcontractors for the manufacture of the tools and dies. Nocula and TSI claim that UGS Corporation ("UGS"), a Texas-based Delaware corporation that sells computer-aided design software, and UGS Sp. z o.o. ("UGS Poland"),[1] a Polish sublicensee of UGS's software, intentionally disrupted Alucon's business by lodging a criminal complaint against it in Poland for theft of intellectual property. In connection with the ensuing prosecution, Polish police seized Alucon's computers. Although the prosecution ended in a verdict for Alucon, the computers disappeared and Alucon's engineering data was lost.

Nocula and TSI claim UGS and UGS Poland maliciously instituted the Polish criminal prosecution and used it as leverage to force the transfer of a license to use UGS's software from a third-party licensee, Electrode Machining Services ("Electrode"), to Alucon. These actions form the basis of various tort and contract claims asserted in this lawsuit filed. UGS and UGS Poland moved to dismiss, arguing the claims were barred by the act-of-state doctrine, which generally prohibits federal courts from entertaining claims that would question the validity of the acts of a foreign sovereign under that sovereign's laws. The district court granted this motion. Nocula, proceeding pro se, filed a timely notice of appeal on his own behalf. After the 30-

---

[1] "Sp. z o.o." (Spolka Z Ograniczona Odpowiedzialnoscia) designates a Polish limited company.

day appeal clock expired, counsel was retained and filed a "corrected" notice of appeal for Nocula *and* TSI.

Jurisdictional defects prevent us from addressing most of the claims in this case. The first notice of appeal—signed and filed by "Mitch Nocula, Pro Se"—was ineffective to provide notice of TSI's appeal; the second notice, naming both Nocula and TSI, was untimely. Accordingly, TSI's appeal must be dismissed for lack of appellate jurisdiction. Nocula's notice of appeal was timely, but most of the claims he asserts belong to his corporation, Alucon, which is not a party. To the extent Nocula is attempting as a shareholder to sue in tort or contract for injuries to Alucon, his claims are barred by the rule against shareholder standing.

One claim arguably belonging to Nocula personally pertains to the "wrongful" loss of the computers and engineering data. We say *arguably* because the amended complaint sometimes describes this as the property of Alucon and at other times asserts the computers and data belonged to Nocula personally. Either way, the district court properly invoked the act-of-state doctrine because the adjudication of this claim would require American courts to question the legality of the seizure and loss of this property during the course of the Polish criminal prosecution. Another claim asserted by Nocula personally is for "harassment," which is not cognizable under Illinois law.

## I. Background

Nocula is the sole owner of TSI, a corporation in the business of soliciting orders for custom-manufactured machine tools and dies. TSI farms out a substantial number of these orders to subcontractors, including Alucon,

a Polish company also owned by Nocula. In the early 1990s, Nocula wanted to use computers to streamline the otherwise complicated and time-consuming process of making tools and dies from prototypes. Nocula teamed up with Charles Hahs Jr. and began to explore the use of computer-aided design ("CAD") applications in the tool-and-die industry. Hahs was the owner of Electrode, a Florida corporation, which held a license to use certain CAD software made by UGS. Using UGS's CAD software, Hahs and Nocula began implementing a "virtual shop" at Alucon, Nocula's Polish company, that allowed tools and dies to be more economically and quickly manufactured.

UGS Poland, a wholly owned subsidiary of UGS responsible for sublicensing UGS's CAD software and enforcing its intellectual property rights in Poland, filed a criminal complaint in Poland against Alucon and Hahs for illegally using UGS software. This accusation prompted the commencement of a criminal prosecution. Polish police seized all of Alucon's computers, effectively shutting down its operations. The president of Alucon was arrested, as was Hahs. These disruptions caused Alucon to default on purchase orders from TSI, which in turn defaulted on a number of its contracts with its own customers.

Nocula sought to resolve this situation with dispatch. He asked UGS what could be done to get the charges against Alucon dropped and the seized computers returned. Nocula negotiated an agreement with UGS that it would "do everything possible to terminate the criminal proceedings against Alucon" in exchange for the transfer of Electrode's UGS software license to Alucon. The license was duly transferred. As a result, Alucon was required to

purchase UGS CAD software and updates from UGS Poland.

Nocula contends UGS reneged on the deal by continuing to demand prosecution of Alucon and its personnel, or at least by not making any effort to see that those charges were dropped. Moreover, he claims UGS Poland billed Alucon for software maintenance it did not perform and updates it did not provide. When Alucon refused to pay, UGS Poland sought and won a civil judgment from a Polish court against Alucon and seized its bank accounts. In the meantime, the Polish criminal prosecution ended with a verdict favorable to Alucon. Unfortunately, according to Polish authorities, Alucon's seized computers and accompanying engineering data "mysteriously disappeared." As a result, Alucon ceased doing business.

Based on these events, Nocula and TSI filed a diversity suit in federal court in Illinois. Nocula's claims include malicious prosecution, fraudulent inducement, breach of contract, tortious interference, a claim for the wrongful loss of his property, and harassment. TSI's claims are for various forms of tortious interference.

UGS and UGS Poland moved to dismiss based on the act-of-state doctrine, and the district court granted the motion. The court held that "any claim based on UGS Poland's filing, prosecuting, receiving and executing on the civil judgment in Poland is barred by the act of state doctrine" because any claim stemming from that action "would require this court to reverse the Polish court's decision." As for any claims touching upon the Polish criminal prosecution, the court concluded that the injuries are "all alleged to stem from the Polish police seizure" of Alucon's computers, and therefore any attempt to recover would require a showing that the seizure was

improper and thus would run afoul of the act-of-state
doctrine.

## II.  Analysis

### A.  Appellate Jurisdiction Over TSI's Appeal

We questioned appellate jurisdiction by order issued
before briefing commenced in this case; our appellate
analysis always begins with the jurisdictional inquiry
regardless of whether it is raised by one of the parties. *See
Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541
(1986); *Balt. Orioles, Inc. v. Major League Baseball Players
Ass'n*, 805 F.2d 663, 666 (7th Cir. 1986); *Christianson v. Colt
Indus. Operating Corp.*, 798 F.2d 1051, 1055 (7th Cir. 1986).
The parties filed memoranda in response to our juris-
dictional order and reiterated their jurisdictional argu-
ments in their merits briefs.

UGS[2] contends we lack jurisdiction over TSI's claims.
No doubt we possess jurisdiction over appeals from
final orders in diversity suits, *see* 28 U.S.C. §§ 1291, 1332,
but our focus here is on the particular requirements of
Rules 3 and 4 of the *Federal Rules of Appellate Procedure*
concerning the time for filing a notice of appeal and what
it must contain. The district court entered its decision
and order granting UGS's motion to dismiss on August 4,
2006, and three days later, on August 7, 2006, entered a
minute order terminating the case. Nocula filed his pro se
notice of appeal on September 5, 2006, within the 30-day

---

[2]  For simplicity's sake, we will refer to UGS and UGS Poland as
"UGS."

time limit prescribed by Rule 4(a)(1)(A).[3] This notice listed Nocula and TSI in the caption but did not specifically mention TSI in the body of the notice. The notice also misidentified the order appealed from and the appellate court to which the appeal was taken. The body of the notice read:

> NOTICE IS HEREBY GIVEN that *MITCH NOCULA, et al, Petitioner above-named*, hereby appeals to the *United States Court of Appeals for the Eighth Circuit* from a final order of the Honorable Robert W. Gettleman, Judge of the Northern District Court of Illinois, Eastern Division, *denying his petition for writ of habeas corpus, declaratory and injunctive relief*, entered in this action on the 4th day of August 2006. (Emphasis added.)

The notice was signed "Mitch Nocula, Pro Se."

On September 12, 2006, counsel for Nocula and TSI filed what was denominated a "Corrected Notice of Appeal." This notice remedied several errors contained in the September 5 notice. The second notice was directed to the correct circuit—the Seventh instead of the originally named Eighth—and the language suggesting that claims for habeas, declaratory, and injunctive relief were being appealed was removed (those types of relief had never been sought). Additionally, whereas Nocula had signed the original notice for himself "pro se," the September 12 notice was signed by an attorney "for Mitch Nocula and Tooling Systems Int'l Corp."

---

[3] Rule 4(a)(1)(A) of the *Federal rules of Appellate Procedure* states: "In a civil case, . . . the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered."

Regardless of the corrections it contained, the second notice was untimely. Absent a motion to extend under Rule 4(a)(5)—which was not filed in this appeal—amendments to a notice must be made within the time set forth by Rule 4(a)(1). *See Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 886 (7th Cir. 1992); *United States* ex rel. *Leonard v. O'Leary*, 788 F.2d 1238, 1239 (7th Cir. 1986). The September 12 notice was filed outside the 30-day appeal period, whether the clock started on August 4, when the district court entered its order dismissing the case, or on August 7, when the court entered its minute order terminating the case; we have previously recognized the latter type of order as a sufficient separate judgment for purposes of Rule 58 of the *Federal Rules of Civil Procedure. See Props. Unlimited, Inc. Realtors v. Cendant Mobility Servs.*, 384 F.3d 917, 920 (7th Cir. 2004) (holding a similar minute order entered on the docket to be a final judgment for purposes of Rule 58 of the *Federal Rules of Civil Procedure* and the 30-day appeal time limit of Rule 4(a)). The timely filing of a notice of appeal is not merely a procedural hoop for parties to jump through; it is a jurisdictional requirement. *See Bowles v. Russell*, 127 S. Ct. 2360, 2363 (2007); *Leonard*, 788 F.2d at 1239. Thus, our examination is limited to the September 5 notice.

A notice of appeal must (1) "specify the party or parties taking the appeal by naming each one in the caption or body of the notice"; (2) designate the judgment from which the appeal originates; and (3) "name the court to which the appeal is taken." FED. R. APP. P. 3(c)(1). The purpose of Rule 3 "is to ensure that the filing provides sufficient notice to other parties and courts." *Nichols v. United States*, 75 F.3d 1137, 1140 (7th Cir. 1996) (quoting *Smith v. Barry*, 502 U.S. 244, 248 (1992)). We have said

that "punctilious, literal, and exact compliance" with Rule 3(c)'s requirements is required. *Allen Archery, Inc. v. Precision Shooting Equip., Inc.*, 857 F.2d 1176, 1177 (7th Cir. 1988); *see also Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988). Notice will be deemed insufficient where the notice of appeal, read as a whole, is ambiguous. *See Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 423 (7th Cir. 1990).

The September 5 notice did not mention TSI as an appealing party, either in the body of the notice or as an appealing party under Nocula's signature—recall that Nocula signed the notice above the typed designation "Mitch Nocula, Pro Se." TSI *was* listed in the caption of the notice, and the body of the notice refers to "Mitch Nocula, et al." But immediately following this is a reference to "Petitioner"—singular—and the notice states that this "petitioner" appeals from "a final order . . . denying *his* petition for writ of habeas corpus, declaratory and injunctive relief." The use of the singular "Petitioner" and "his," together with the signature line that read "Mitch Nocula, Pro Se," without any reference to TSI, gave proper notice only that Nocula was appealing.[4] As to TSI, however, the notice was ambiguous. Corporations cannot appear pro se, *see Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985); *Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook County*, 543 F.2d 32,

---

[4] References to the wrong circuit court and nonexistent claims were obvious errors that could not have led to confusion or ambiguity in the notice. *See United States v. Musa*, 946 F.2d 1297, 1301 (7th Cir. 1991) (notice of appeal's misidentification of court being appealed to did not deprive the appellee of notice); *accord McLemore v. Landry*, 898 F.2d 996, 999 (5th Cir. 1990).

33-34 (7th Cir. 1976), and one pro se litigant cannot represent another, *see* 28 U.S.C. § 1654. Nocula did not sign the notice in any representative capacity on behalf of TSI. The caption lists TSI as "an Illinois Corporation" and Nocula as "an individual"; the latter designation does not provide any indication Nocula was asserting claims in a representative capacity on behalf of TSI.

Nocula and TSI cite a Ninth Circuit case, *Bigelow v. Brady (In re Bigelow)*, 179 F.3d 1164, 1165 (9th Cir. 1999), for the proposition that an officer of a corporation can sign a notice of appeal for the corporation provided a lawyer subsequently makes a formal appearance. In *Bigelow*, however, the corporate officer signed the notice of appeal *on behalf of* the corporation. *Bigelow* has since been distinguished by *D-Beam Ltd. Partnership v. Roller Derby Skates, Inc.*, 366 F.3d 972, 974 (9th Cir. 2004), which addressed whether a notice sufficiently indicated both a corporate president's and the corporation's intent to appeal. In *D-Beam*, the Ninth Circuit held that because the corporate president did not sign the notice "on behalf of" the corporation and the notice only referred to a singular "plaintiff," it failed to provide sufficient notice of the corporation's appeal, as distinct from the president's. *Id.*

We are not bound by either *Bigelow* or *D-Beam*, but we think this case is closer to *D-Beam* than *Bigelow.* Nocula and TSI asserted separate and distinct claims in this case, and the body of the notice of appeal used the singular "Petitioner" to refer to the appealing party. As in *D-Beam*, Nocula signed the notice for himself, not "for" or "on behalf of" TSI. Accordingly, because the September 5 notice of appeal was ambiguous as to TSI, we lack jurisdiction to hear TSI's appeal.

**B. Nocula's Appeal**

The district court granted UGS's motion to dismiss the case under the act-of-state doctrine. We review the grant of a motion to dismiss de novo. *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Before we take up the act-of-state doctrine, however, there is a threshold question regarding Nocula's standing. Nocula asserted claims for malicious prosecution, fraudulent inducement, breach of contract, and tortious interference, all stemming from UGS's actions against Alucon in Poland. More specifically, Nocula claims UGS: (1) maliciously filed a criminal complaint against Alucon in Poland, resulting in the seizure and loss of Alucon's computers by the Polish government and the demise of Alucon; (2) fraudulently induced the transfer of Electrode's UGS software license to Alucon, precipitating the civil dispute between UGS and Alucon in Poland; (3) breached its oral agreement to facilitate the termination of the Polish criminal prosecution against Alucon; and (4) by all of the foregoing actions, tortiously interfered with Alucon's contracts and prospective economic benefits. Notably, these claims all describe injuries *to Alucon*, not Nocula.

It is well established that a shareholder generally cannot sue to enforce the rights of the corporation. *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990); *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989); *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1194 (7th Cir. 1985). This is a prudential limitation on standing, a strand of the standing doctrine that prohibits litigants from suing to enforce the rights of third parties. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17-18 (2004); *MainStreet Org. of*

*Realtors v. Calumet City, Ill.*, 505 F.3d 742, 746 (7th Cir. 2007). Although closely related to the requirements of constitutional standing, we have held that the absence of prudential standing "is not jurisdictional in the sense that Article III standing is," but nevertheless may be raised by the court on its own, even though the parties have not noticed it. *MainStreet Realtors*, 505 F.3d at 747. That is the case here. When we raised the issue at oral argument, UGS's counsel (not surprisingly) agreed that Nocula lacked standing as a shareholder to bring these claims, which assert injuries to Alucon; Nocula's counsel did not take the opportunity to respond during rebuttal.

There are exceptions to the rule against shareholder standing for cases in which corporate management has refused to pursue the action for reasons unrelated to good-faith business judgment, or when the shareholder has suffered a direct, personal injury not derivative of the corporation's, or a special contractual duty exists. *See Franchise Tax Bd. of Cal.*, 493 U.S. at 336-37; *Twohy*, 758 F.2d at 1194; *see also Goldberg v. Michael*, 766 N.E.2d 246, 251 (Ill. App. Ct. 2002); *Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56, 60 (Ill. App. Ct. 2002); *Small v. Sussman*, 713 N.E.2d 1216, 1219 (Ill. App. Ct. 1999). None of these exceptions applies here. Although the amended complaint refers to an agreement (fraudulently induced and/or breached) between UGS and *Nocula*, the detailed factual allegations make it clear that Nocula merely *negotiated* the agreement on behalf of Alucon. No performance *by Nocula* was promised or expected. The contractual rights and obligations flowed between UGS and Alucon, or perhaps between UGS, Alucon, and Electrode. As described in the amended complaint, the agreement called for Electrode's UGS software license to be trans-

ferred to Alucon and, in exchange, UGS would bring about the termination of the Polish criminal prosecution.[5]

Accordingly, the claimed tort and contract injuries were to Alucon's interests; as sole shareholder, Nocula lacks standing to sue for redress of the corporation's injuries. Although the amended complaint alleges these injuries were inflicted on "Nocula and Alucon concurrently in that UGS and UGS Poland knew that Nocula was the owner of Alucon" and that "Nocula was using Alucon in the Virtual Shop Project," as to Nocula, this states a shareholder injury only. Nocula's injury as sole shareholder, although indirect, may suffice to satisfy Article III standing, but the prudential rule against shareholder suits for injuries to the corporation precludes him from bringing these claims because they belong to the corporation.

The district court thought Illinois law might permit Nocula to bring the malicious prosecution claim in his own name even though the Polish prosecution was directed against the corporation only, citing *Caspers v. Chicago Real Estate Board*, 206 N.E.2d 787, 789 (Ill. App. Ct. 1965). We disagree. In *Caspers*, the Illinois Appellate Court invoked the corporate veil-piercing "alter ego" concept in a counterdoctrinal manner. *Caspers* did not use the veil-piercing theory to disregard the corporate form in order to hold a sole shareholder liable for the corporation's debts or obligations as the corporation's alter ego because

---

[5] Moreover, we note that in Illinois, as in other states, an agreement of this sort is likely unenforceable because the consideration—consisting of a promise to try to stop a criminal prosecution—is against public policy. *See Griner v. Griner*, 340 N.E.2d 304, 305 (Ill. App. Ct. 1976).

of commingling, undercapitalization, or failure to observe corporate formalities, which is the usual application of the theory. *See Snyder v. Dunn*, 638 N.E.2d 744, 748 (Ill. App. Ct. 1994). Rather, the court in *Caspers* simply cited the alter ego principle in a wholly summary fashion as support for the proposition that the sole shareholder in that case may sue for malicious prosecution of the corporation. *Id.* The court did not undertake any veil-piercing analysis whatsoever or otherwise explain this novel use of alter ego doctrine. In any event, *Caspers* has been severely limited as precedent on this point by *Loy v. Booth*, 307 N.E.2d 414, 416 (Ill. App. Ct. 1974). *Loy* characterized *Caspers* as follows: "*Caspers* . . . was a case of malicious prosecution and the holding in that case was simply that the plaintiff as the sole stockholder was the individual actually injured rather than the corporation and theoretically could bring the action, although the case was actually dismissed on other grounds." *Id.* (citation omitted). Accordingly, *Caspers* does not stand as precedent for a general exception to the rule against shareholder standing for malicious prosecution cases.[6]

To the extent Nocula asserts a *personal* claim for the lost computers and accompanying engineering data, we agree with the district court that it is barred by the act-of-state doctrine. Nocula's legal theory on this point is unclear; as we have noted, the recognizable claims—for

---

[6] We note that Illinois law disfavors actions for malicious prosecution on policy grounds because of the strong public interest in reporting possible crimes. *See Allen v. Berger*, 784 N.E.2d 367, 369-70 (Ill. App. Ct. 2002); *Thomas v. Hileman*, 775 N.E.2d 231, 234 (Ill. App. Ct. 2002); *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 840 (Ill. App. Ct. 2000).

malicious prosecution, fraudulent inducement, breach of contract, and tortious interference—belong to Alucon, and the rule against shareholder standing precludes Nocula from asserting them. The amended complaint alleges only that "UGS and UGS Poland wrongfully seized valuable property belonging to Nocula, deprived him of the use and value of it and are now unable to return it or to cause it to be returned to him." Actually, the amended complaint is internally inconsistent on the ownership of the computers, claiming *both* that the computers were the property of Alucon *and* that they belonged to Nocula personally. Whichever is true, any judicial inquiry into the wrongful loss of the computers implicates the act-of-state doctrine.

The act-of-state doctrine is a judicial rule that "generally forbids an American court to question the act of a foreign sovereign that is lawful under that sovereign's laws." *F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 283 (7th Cir. 1989); *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 769 (1972) ("The act of state doctrine . . . is a judicially accepted limitation on the normal adjudicative processes of the courts, springing from the thoroughly sound principle that on occasion individual litigants may have to forgo decision on the merits of their claims because the involvement of the courts in such a decision might frustrate the conduct of the Nation's foreign policy."); *Underhill v. Hernandez*, 168 U.S. 250 (1897); *see also Sarei v. Rio Tinto, PLC*, 456 F.3d 1069, 1084-85 (9th Cir. 2006); *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 391-92 (3d Cir. 2006). Kin to the doctrine of sovereign immunity, the act-of-state doctrine arises from the presumption of validity accorded to the official public acts of a foreign country, *see Underhill*,

168 U.S. at 252; *Farman-Farmaian*, 882 F.2d at 283, and the concern that "application of customary principles of law to judge the acts of a foreign sovereign might frustrate the conduct of foreign relations by the political branches of the government," *First Nat'l City Bank*, 406 U.S. at 767-68.

The decision of a foreign sovereign to exercise its police power through the enforcement of its criminal laws plainly qualifies as an act of state. Accordingly, we have no trouble concluding that the Polish prosecution of Alucon, which included the seizure of the computers and their subsequent loss, is an act of state for purposes of the doctrine. The seizure of the property was obviously part and parcel of the criminal prosecution. Notwithstanding the amended complaint's legal claim that "UGS and UGS Poland wrongfully seized" Nocula's property, the more specific factual allegations make it clear, and Nocula's brief confirms, that the seizure was conducted by Polish police in connection with the criminal prosecution. The amended complaint further alleges that the "Polish authorities" informed Nocula after the verdict that the computers "mysteriously disappeared." To the extent the subsequent loss of the computers was wrongful (i.e., negligent), the loss is attributable to the Polish government, not UGS. Accordingly, any personal claim by Nocula seeking to hold UGS liable for the wrongful loss of the computers would necessarily call for an inquiry into the acts of a foreign sovereign and is barred by the act-of-state doctrine.

Finally, Nocula alleges UGS "deliberately, tortiously and maliciously harassed" him with threats of prosecution for trespass and "other offenses." There is no harassment tort under Illinois law, though harassment may be a component of a claim for intentional infliction of emotional distress. *See*

*Brackett v. Galesburg Clinic Ass'n*, 689 N.E.2d 406, 409 (Ill. App. Ct. 1997). Recognizing that complaints are not required to state a legal theory of recovery, *see Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992), we think it would stretch the bounds of notice pleading beyond reasonable limits to interpret an allegation of harassment as a claim for intentional infliction of emotional distress.

For the foregoing reasons, TSI's appeal is dismissed for lack of appellate jurisdiction. Nocula's malicious prosecution, fraudulent inducement, breach-of-contract, and tortious interference claims are dismissed for lack of standing pursuant to the rule against shareholder standing. Nocula's claim for the wrongful loss of his property is barred by the act-of-state doctrine, and his harassment claim fails to state a cognizable claim for relief.

DISMISSED IN PART, AFFIRMED IN PART.