# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 02-3709 & 03-1488

PROPERTIES UNLIMITED, INC. REALTORS,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

CENDANT MOBILITY SERVICES, *et al.*,

*Defendants-Appellees, Cross-Appellants.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 8375—**James B. Moran**, *Judge.*

———————

ARGUED SEPTEMBER 8, 2003—DECIDED OCTOBER 7, 2004

———————

Before KANNE, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Properties Unlimited (Properties) is an Illinois real estate brokerage firm that participated for a number of years as a franchisee of Coldwell Banker Real Estate Corporation (Coldwell), a large national firm. Through that connection, Properties was also able to participate in the Coldwell Relocation Plan, which was a lucrative source of referrals from Coldwell itself and from other Coldwell franchisees. This suit arose after Properties renewed its franchise agreement with Coldwell in 1995 for

another seven years, expecting more or less the same level of referrals. In 1996, however, a predecessor of Cendant Corporation, one of the defendants here, acquired the franchisor of the Coldwell Banker network and decided to phase out the Coldwell Relocation plan and to replace it with a new plan dubbed the Cendant Mobility Program. In order to do so, Properties alleges, Cendant made certain representations to the Coldwell franchisees, including Properties, essentially promising that these changes would be beneficial overall. When Properties realized that this was not going to be the case, it brought this lawsuit under the diversity jurisdiction, asserting claims based on common law fraud, the Illinois Consumer Fraud and Deceptive Practices Act, and breach of contract.

The proceedings in the district court turned into a procedural snarl, but at the end of the day, Properties was unsuccessful. Properties is now trying to appeal from the district court's orders dismissing all claims, but it must first convince us that this appeal is timely before we can reach the merits. That finding is possible only if we conclude that the district court's efforts to vacate its original judgment and later to re-enter judgment on September 25, 2002, had the effect of postponing the time to appeal. Cendant has cross-appealed from a later order of February 19, 2003, purporting to clarify everything. While we realize that matters became quite confused for a time, in the final analysis it is clear that Properties failed to file a timely appeal. We therefore dismiss the principal appeal as untimely; this in turn moots Cendant's timely cross-appeal from the Rule 60(b) order.

# I

Properties, an Illinois corporation with its principal place of business in Illinois, filed this lawsuit against Cendant Mobility Services and Cendant Corporation, both Delaware corporations with their principal places of business outside

of Illinois, on October 31, 2001. After preliminary proceedings, the defendants filed a motion to dismiss for failure to state a claim, under Rule 12(b)(6). On May 24, 2002, the district court entered a Minute Order, accompanied by a Memorandum Opinion, granting the defendants' motion and dismissing with prejudice Counts I, II, and III of the complaint. The Order went on to say that "[s]ince plaintiff has voluntarily dismissed Count IV, plaintiff's complaint is dismissed." This order was entered on the court's docket on May 28, 2002. Unfortunately, however, no formal judgment form reflecting this fact was prepared, nor does the docket sheet show a separate entry for the judgment.

On June 13, 2002, more than ten days after the order was docketed (as these things are counted under Rule 6(a)), Properties filed a motion for reconsideration of the May 24 order. Five days later, on June 18, it followed up with an emergency motion under Rule 60(b)(1) for relief from the May 24 order or for an extension of time to file a notice of appeal under FED. R. APP. P. 4(a)(5). It did so notwithstanding the fact that the 30-day period for appeal provided by Appellate Rule 4(a)(1) was not due to expire until June 27. Apparently, Properties was concerned that the district court would not have enough time to ponder its motion for reconsideration before the time for appeal expired. On June 19, the district court granted the Rule 4(a)(5) motion, extending the time for appeal until July 26, 2002; at the same time, it denied the Rule 60(b)(1) motion as moot. It explained that it was extending the time for appeal to give itself an opportunity to rule on the motion to reconsider.

On July 24, 2002, the district court was still not ready to rule on the merits of the motion to reconsider. At that point, it took the unusual step of ordering that the ruling of May 24 dismissing the case "struck." It made that decision in chambers, and there is no transcript of what was said. In a later order, however, the court stated that "we were convinced that the motion for reconsideration merited careful

consideration and, if we were to change our views, it made no sense to burden the Court of Appeals with an unnecessary appeal. Accordingly, at a time when an appeal was still timely, it was our intention to vacate any appealable order and to postpone any appeal until the ruling upon the motion for reconsideration determined whether the dismissal would stand." In the end, the delays did Properties little good. On September 25, 2002, the district court denied its motion to reconsider and its request for leave to amend. That order reads, "We adhere to our original conclusion and deny the motion to reconsider." It said nothing about reinstating the order of May 24, 2002. On October 15, 2002, Properties filed its notice of appeal from the September 25 order.

Cendant contested jurisdiction in this court on the ground that the July 24 order had indeed stricken the May 24 order, but that the July order had done nothing about the judgment entered on the docket on May 28. Properties responded with a new motion under FED. R. CIV. P. 60(b) and FED. R. APP. P. 10(e), seeking to "clarify" that the judgment flowing from the May 24 order had also, or should also have been, vacated. The district court granted that motion in an order dated February 19, 2003. The court regarded Cendant's argument before this court that the July 24 order had vacated only the May 24 order, and not the May 28 docketed judgment, as coming too late in the day. It concluded as follows:

> We intended that the "Order" struck on July 24, 2002, encompass the Judgment Order (what else could it mean?), and we believe that Rule 60(b) relief, which we have power to grant despite the pendency of the appeal, Stone v. INS, [514 U.S. 386, 401-02 (1995)], and FED. R. APP. P. 10(e), both provide ample justification for granting the motion.

Cendant then cross-appealed from the February 19 order.

## II

The first question we must resolve is whether the May 24 order, entered on the docket on May 28, was a final judgment. If it was, then the rest of our analysis is relatively straightforward. If not, then we confront a different set of problems, as it is unclear when anything else that counts as a final judgment may have been entered. The order docketed on May 28 bore all the indicia of a final judgment: it disposed of all claims of all parties; it announced that the dismissals of the counts remaining in the case were with prejudice; and it said nothing that would have hinted that the court expected to see an amendment to the complaint. True, there was no separate judgment entered on the AO 450 judgment form pursuant to FED. R. CIV. P. 58, but it has been well-established for years in this court that the lack of a Rule 58 judgment does not prevent a judgment from being final and appealable. See *Otis v. City of Chicago*, 29 F.3d 1159, 1165 (7th Cir. 1994) (en banc). The parties also believed that the district judge had finished with the case. They were seeking reconsideration and extra time to appeal, not anything that logically would precede final judgment. We conclude that the entry of May 28 in the docket was a final judgment in this case, as contemplated not only by FED. R. CIV. P. 58, but also by FED. R. APP. P. 4(a)(7).

At that point, Properties had 30 days in which to file a notice of appeal. Had it filed a motion to reconsider within 10 days of the entry of judgment, such a motion would have tolled the time for appeal until the court ruled on it, see FED. R. APP. P. 4(a)(4). But it did not. Instead, it filed a motion on June 13, two days after the 10-day period expired. That motion was necessarily under FED. R. CIV. P. 60(b), and the appellate rules are clear that such a motion does not toll the time for filing a notice of appeal. See FED. R. APP. P. 4(a)(4)(A)(vi). Although the district court has the power to extend the time for filing a notice of appeal upon a proper motion filed under FED. R. APP. P. 4(a)(5), that rule also provides as follows:

> (C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 10 days after the date when the order granting the motion is entered, whichever is later.

The rule does not preclude a party from filing a motion to extend the time for appeal during the period before the original 30-day time has run, as Properties did here. See Rule 4(a)(5)(B) (expressly acknowledging that a motion might be filed before the end of the time period prescribed by Rule 4(a)(1)). But it does place an outer limit on the amount of extra time a district court may grant, and we must see whether the district court here exceeded that limit.

Under the first branch of Rule 4(a)(5)(C), Properties was entitled to an extension of up to 30 days beyond the "prescribed" time, which for civil appeals not involving the United States is the original 30-day period. Thus, the court could extend the time for appeal until July 27, 30 days beyond the original deadline of June 27. That is more or less what the court did on June 19, when it granted Properties' Rule 4(a)(5) motion and set the appeal deadline for July 26. (The alternative date under the rule would have been 10 days after the order granting the motion, or June 29, but the rule then makes clear that it is the later of the two possibilities that governs.)

Instead of sticking with the July 26 date, however, the court sought to buy more time for its own reconsideration of the May 28 judgment and more time before Properties would appeal, through the expedient of "vacating" the May 24 order. But its later action, on September 25, makes it clear that nothing was really vacated. Instead, on that date the court simply denied the motion to reconsider and did not even formally reinstate the May 24 order. We thus have no occasion to address here what might happen if a district court decided truly to vacate a final judgment like the one entered here on May 28 and to restore a case to its docket,

all before anyone had filed a Notice of Appeal to this court. On these facts, we have only a series of moves designed to give a longer period of time for filing an appeal than that provided for in Appellate Rule 4. This was beyond the power of the district court to do. Properties' Notice of Appeal was not filed until October 15, which was too late.

Recognizing the seriousness of its problem, Properties urges us to permit its appeal nonetheless, under the so-called unique circumstances doctrine. The Supreme Court first recognized this narrow rule in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962). As we described it later in *Varhol v. National Railroad Passenger Corp.*, 909 F.2d 1557 (7th Cir. 1990) (en banc), the Court held in *Harris Truck* that

> if a party relies on a district court's extension of time to file a notice of appeal, and delays an appeal, the court of appeals should not dismiss the appeal because it disagrees with the district court's finding of excusable neglect. . . . If the decision to grant an extension is open to second-guessing by the appellate court, the only way a party could protect itself would be to file an appeal within thirty days of the judgment; but the extension of time was supposed to allow the party to defer the decision to appeal.

909 F.2d at 1562 (citing *Harris*, 371 U.S. at 217). In *Thompson v. INS*, 375 U.S. 384 (1964), the Court expanded this idea to include cases in which a party had relied on a district court's conclusion that an act had properly been done, and the appeal was timely under a mistaken new deadline. It clarified that rule in *Osterneck v. Ernst &Whinney*, 489 U.S. 169, 179 (1989), holding that the party filing late would be excused if he "has received specific assurance by a judicial officer that this act has been properly done."

We have taken a narrow view of the *Osterneck* rule, lest it become an exception that swallows the rules concerning

time for appeal. Merely entering a minute order that apparently extends the time for filing a motion under FED. R. CIV. P. 59, for example, is not enough to count as a "specific assurance" from the court. See *Green v. Bisby*, 869 F.2d 1070, 1072 (7th Cir. 1989). Similarly, it cannot be enough if the district court announces that it is giving the parties more time than the rules permit, because the rules then would impose no limits on the court's discretion. In our view, the "unique circumstances" exception is available only when there is a genuine ambiguity in the rules to begin with, and the court resolves that ambiguity in the direction of permitting additional time to appeal. In that case, the equities that motivated the Supreme Court to begin with lie strongly on the side of the party who relied on the affirmative judicial statement.

This case does not meet that standard. Properties was well-aware of its position at the time it filed its June 18 motion for relief under Rule 60(b). It is, and has been for years, pellucidly clear that a motion for reconsideration filed more than 10 days after a final judgment does not toll the time for a Notice of Appeal. It is obvious that Properties knew this, or it would not have asked for extra time for its appeal in the June 18 motion. The fact that the district court later sought to give Properties more than the permissible extra 30 days for filing its appeal through the device of "vacating" the May 24 order does not change the legal effect of what happened. The judge had no power to give Properties any more time to appeal from the May 28 judgment, and it follows that the Notice of Appeal filed on October 15 was late by almost three months. (We express no opinion on the possibility that there still may be time for the judge to enter a proper Rule 58 judgment, and thus to open a new window for appeal. See *United States v. Indrelunas*, 411 U.S. 216 (1973); but see FED. R. APP. P. 4(a)(7)(A)(ii), as amended Dec. 1, 2003, which limits the window provided by *Indrelunas* to 150 days.)

### III

Because Properties' appeal was not filed in time, it is DISMISSED. As for the September 25 order that purported to clarify the order of July 24, the first thing to note is that Properties is not appealing from it as a separate matter, and thus the fact that its Notice of Appeal was filed within 30 days of that order makes no difference. To the extent that it has challenged the September 25 order as a stand-alone matter, we note that this order was entered under Rule 60(b), and we find no abuse of discretion in the district court's decision to adhere to its original rulings. Cendant's cross-appeal from the February 19, 2003 order, which merely indicated that the judge had intended to vacate both the May 24 order and the May 28 docketed judgment, is moot in light of our decision on Properties' appeal and is therefore DISMISSED on that basis. Costs on this appeal are assessed against Properties.


A true Copy:

      Teste:


                 _____
                 *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*