In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2243

MICHAEL CARTER,

*Petitioner-Appellant,*

*v.*

MARC HODGE,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 3783 — **Harry D. Leinenweber**, *Judge.*

SUBMITTED JULY 19, 2013 — DECIDED AUGUST 8, 2013

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The routine screening of appeals
that the court's staff conducts to make sure an appeal is
within this court's appellate jurisdiction has flagged a signif-
icant issue of timeliness.

Michael Carter is an Illinois prison inmate whose petition
for habeas corpus under 28 U.S.C. § 2254, originally filed
elsewhere, was transferred to the Northern District of Illinois
in June of 2010. On December 5 of the following year, having

heard nothing about the status of his case, Carter inquired of the clerk's office. The office responded: "Status request: As of this date, the Court has taken no further action on the re-quested case. When an order is entered, you will be prompt-ly notified by mail." The response was incorrect; the district court had denied Carter's petition for habeas corpus on Feb-ruary 10, 2011, following the issuance of an opinion by the district judge the previous day. *Carter v. Ryker*, No. 10 C 3783, 2011 WL 589687 (N.D. Ill. Feb. 9, 2011). The opinion was not sent or otherwise made available to Carter.

After hearing nothing further from the district court for more than a year, Carter again wrote the clerk and this time was correctly informed by a letter that he received on March 22 of this year that his petition had been denied two years ago, in February 2011. On April 16, fewer than 30 days after receiving the information from the district court clerk, he filed a notice of appeal and a petition for a certificate of ap-pealability. The district court did not docket his papers until May 31. But April 16, the date on which Carter submitted them to the prison authorities for mailing, is the official fil-ing date of his notice of appeal. *Houston v. Lack*, 487 U.S. 266, 276 (1988); Fed. R. App. P. 4(c)(1).

Rule 4(a)(6)(7) of the appellate rules permits a district court to reopen the time to appeal if as in this case the liti-gant did not receive, within 21 days of the judgment that he wants to appeal from, notice of that judgment. But the liti-gant must request this relief no later than 180 days after the judgment is rendered or 14 days after he receives notice of the judgment under Fed. R. Civ. P. 77(d) (which requires service on the litigant), whichever comes first. Fed. R. App. P. 4(a)(6)(B); see also 28 U.S.C. § 2107(c). Because the district

judge failed to set out his judgment denying the petition for habeas corpus in a separate document as required by Fed. R. Civ. P. 58(a) (despite our repeated reminders that district courts *must* comply with the rule, see, e.g., *Rush University Medical Center v. Leavitt*, 535 F.3d 735, 737 (7th Cir. 2008); *Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994) (en banc); *Armstrong v. Ahitow*, 36 F.3d 574, 575 (7th Cir. 1994) (per curiam)), Rule 58(c)(2)(B) (and also Fed. R. App. P. 4(a)(7)(A)(ii)) deemed the judgment to have been rendered 150 days after the denial of the petition was entered on the district court's docket: hence on July 11, 2011.

Analysis is slightly complicated by the fact that the judge did promptly make a minute entry of his dismissal of Carter's petition for habeas corpus on the district court's docket. We have suggested that such a notation might satisfy Rule 58. *Nocula v. UGS Corp.*, 520 F.3d 719, 724 (7th Cir. 2008); *Properties Unlimited, Inc. Realtors v. Cendant Mobility Services*, 384 F.3d 917, 919–20 (7th Cir. 2004). Other courts have disagreed. See, e.g., *Transit Management of Southeast Louisiana, Inc. v. Group Insurance Administration, Inc.*, 226 F.3d 376, 382 (5th Cir. 2000); *Yourish v. California Amplifier*, 191 F.3d 983, 987–88 (9th Cir. 1999). No matter; as in *Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 361–62 (7th Cir. 2009), the appellee has conceded in his jurisdictional memorandum that no Rule 58(a) judgment was entered.

The 180-day limit on requesting the district court to reopen the time in which to appeal (in this case 180 days after the 150 days after the district court's decision) was reached on January 7, 2012, at a time when Carter had been led to believe, just a month earlier, that his petition for habeas corpus

was still pending. Had he received timely notice of the deni-
al of his petition, he could have sought under Rule 4(a)(6) of
the appellate rules to reopen the time within which to appeal
that denial. He never did move to reopen; and even if we
treated his April 16 filings as such a motion, the motion
would have been untimely.

But Carter is saved by equitable tolling—"the judge-
made doctrine, well established in federal common law, that
excuses a[n un]timely filing when the plaintiff could not, de-
spite the exercise of reasonable diligence, have discovered all
the information he needed in order to be able to file his claim
on time," *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999), pro-
vided that he acted promptly once he finally got the infor-
mation. *Yuan Gao v. Mukasey*, 519 F.3d 376, 379 (7th Cir.
2008). Carter meets all these conditions. But we must decide
whether the doctrine is applicable.

It isn't applicable to jurisdictional deadlines, which dead-
lines for filing notices of appeal have been held to be. *Bowles
v. Russell*, 551 U.S. 205, 214 (2007); *Socha v. Pollard*, 621 F.3d
667, 670 (7th Cir. 2010). That exception is in tension with the
prevailing modern view that, as we put it in *In re IFC Credit
Corp.*, 663 F.3d 315, 319 (7th Cir. 2011), federal subject-matter
jurisdiction is "about the competence of the tribunal—
'competence' in the sense of legal empowerment to decide a
case—rather than about the mistakes that litigants and some-
times judges make in a case that is within the tribunal's
competence." See *Kontrick v. Ryan*, 540 U.S. 443, 454–55
(2004); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 171–74
(2010) (concurring opinion); *Wisconsin Valley Improvement Co.
v. United States*, 569 F.3d 331, 333 (7th Cir. 2009); *Moore v. Ol-
son*, 368 F.3d 757, 759–60 (7th Cir. 2004); *Menominee Indian*

*Tribe v. United States*, 614 F.3d 519, 523–24 (D.C. Cir. 2010). Obviously the federal courts are legally empowered to de-cide cases brought under 28 U.S.C. § 2254. Statutes of limita-tions are statutory deadlines for filing suits, yet equitable tolling is allowed to postpone those deadlines. See, e.g., *Hol-land v. Florida*, 130 S. Ct. 2549 (2010). Why should deadlines for appealing be treated differently?

But they are, and we are bound. But Rule 58(c)(2)(B)—the subdivision of Rule 58 that provides that when the district court fails to comply with Rule 58(a) the judgment is deemed entered 150 days after the court's decision—does not set an appeal deadline. It has significance for the time within which to appeal, but in itself the rule is just about the dating of the judgment, as further suggested by the Supreme Court's decision in *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978) (per curiam). That decision holds that the parties to an appeal can waive Rule 58's separate-judgment requirement. A jurisdictional rule is not waivable.

Before 2002, when both Rule 58 and appellate Rule 4(a)(7) were amended to add the 150-day provision, a losing party had forever to appeal if the district court never entered a Rule 58 judgment. See *United States v. Indrelunas*, 411 U.S. 216 (1973) (per curiam); *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987); *Quinn v. Haynes*, 234 F.3d 837, 843 (4th Cir. 2000). Forever is too long. The Committee Notes to the 2002 amendment to appellate Rule 4(a)(7) describes the 150-day provision as a compromise between the interest in finality and the protection of a litigant's right to appeal: "150 days of inactivity … signals to litigants that the court is done with their case." But it couldn't signal that to Carter, because the

office of the clerk of the district court told him that his case was still under consideration by the judge. It misled him.

There is no reason not to toll the 150-day provision until March 22, 2013, the day Carter finally learned that the district judge had decided the case against him. He could not, considering his situation as a prisoner without legal sophistication or a lawyer, have learned this essential information earlier. Having been told back in December 2011 that his petition was pending and—as important—that he'd be informed when the judge ruled on the petition, Carter had no reason to think that he would have to make periodic inquiries of the clerk's office concerning the status of his case in order to protect his right to appeal.

His situation might even be equated to that of the litigant when on the final day for filing his notice of appeal a blizzard closes the court, preventing him from filing. In that situation the deadline is extended to the reopening of the court. Fed. R. App. P. 26(a)(3) and 2009 Advisory Committee Notes thereto. Though bad weather that forces the closing of the court clerk's office is the canonical example of circumstances that preclude appealing within the specified time, the Committee Notes are explicit that the rule (which does not mention weather) is not so limited. The extension is only to "the first accessible day." Fed. R. App. P. 26(a)(3)(A), (B), but for Carter—a prisoner litigating pro se and deceived by the clerk regarding the deadline for appealing—the first day on which the district court was accessible for the filing of his notice of appeal was, so far as appears, April 16, 2013.

It's true he wasn't physically prevented from filing the notice of appeal earlier. But the clerk's office was "inaccessible" to him, Fed. R. App. P. 26(a)(3), in the same way that

*War and Peace* in the original Russian is inaccessible to someone who can't read Russian, though he might own a Russian edition and therefore be able to thumb the pages, staring dumbly at the inscrutable Cyrillic script. Equally a litigant could "access" the storm-shut clerk's office by slipping his notice of appeal under the door or though the mail slot, or, in desperation, wrapping it around a stone and flinging the stone through the office window.

But we need not commit ourselves to this doubtless rather extravagant reading of Rule 26; it is enough, to persuade us that the appeal is timely, that the 150-day judgment-deeming rule can be and has been equitably tolled. We therefore decline to dismiss Carter's appeal at this juncture. Whether he is entitled to a certificate of appealability will be decided separately.