NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2014[*]
Decided July 17, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-3597

| | |
|---|---|
| ROBERT WILLIAMS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:11-cv-447-DGW |
| | |
| MAGID FAHIM, | Donald G. Wilkerson, |
| *Defendant-Appellee.* | *Magistrate Judge.* |

**O R D E R**

Robert Williams, an Illinois inmate, was treated for a finger injury at Menard Correctional Center and at the Orthopaedic Institute of Southern Illinois. In this civil-rights suit, he alleges that Magid Fahim, a general practitioner employed by Wexford Health Services as Menard's medical director, was deliberately indifferent in

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

treating his injury. The district court (through a magistrate judge presiding by consent) granted summary judgment for Dr. Fahim. We affirm the judgment.

Because we are reviewing a grant of summary judgment, we construe the evidence and draw all reasonable inferences in favor of Williams, the opposing party. *See Williams v. City of Chicago*, 733 F.3d 749, 752 (7th Cir. 2013). Williams injured his left middle finger in May 2009 in an attack by another inmate. The finger was x-rayed, and Adrian Feinerman, a prison doctor, concluded that a joint in the finger was dislocated. Williams was referred to the Orthopaedic Institute of Southern Illinois where Steven Young, an orthopedic surgeon, operated on the finger in June 2009. Even after surgery, however, the finger "still would not function."

Dr. Feinerman then left Menard, and Dr. Fahim became the prison's medical director in September 2009. He began treating Williams in October 2009 and found that the injured joint was stiff and immobile. Dr. Fahim instructed Williams to exercise the finger and prescribed painkillers. He also considered referring Williams to Dr. Young for additional treatment. Indeed, Williams returned to the Orthopaedic Institute three months later in January 2010, and Dr. Young diagnosed a contracture in the finger and recommended a second surgery and postoperative physical therapy. After consulting another physician at Wexford, Dr. Fahim approved the second surgery and decided that Williams would receive "education of physical therapy at Dr. Young's office." The operation, which involved inserting a pin into the injured finger, was performed in February 2010. Williams returned to Menard with written instructions describing exercises he should perform as well as a note stating that the surgical sutures would be removed 14 days after the operation.

Fifteen days passed, and Williams submitted a grievance complaining that the sutures had not been removed and requesting a transfer to Stateville Correctional Center so that he could receive physical therapy. He submitted another grievance 13 days later, iterating that the sutures still remained and accusing Dr. Fahim of directing him to perform an exercise that "cause[d] the pin to go inside" his finger, rather than "stick[] out like it should." That exercise, Williams insisted, was not included in the written instructions received from the Orthopaedic Institute. Two days later (and more than four weeks after the surgery) the pin and sutures were removed at the Orthopaedic Institute. The following month, in April 2010, Dr. Young recommended a third surgery. Dr. Fahim withheld approval for that procedure.

Williams sued Dr. Fahim, claiming a violation of the Eighth Amendment. First, Williams alleged, the sutures were removed late. Second, he said, a physical therapist at the Orthopaedic Institute had instructed him not to perform certain exercises until after Dr. Young had removed the pin and declared the finger sufficiently healed, and yet Dr. Fahim "had me doing exercise even though I told him that I was not suppose[d] to do any exercise period." That exercise, said Williams, caused him "severe pain and suffering." Finally, he alleged that Dr. Fahim had disregarded Dr. Young's opinion that Williams needed postoperative physical therapy. (Williams also named as defendants Wexford and a grievance officer at the prison, but the district court ruled at screening, *see* 28 U.S.C. § 1915A, that Williams failed to state a claim against those defendants. Williams does not challenge this ruling on appeal.) After filing his complaint, Williams requested counsel and explained that he has paranoid schizophrenia and only a ninth-grade education. The district court eventually recruited a lawyer.

Dr. Fahim then moved for summary judgment. Though he conceded for purposes of summary judgment that the injury to Williams's finger is a serious medical condition, he maintained that he was not deliberately indifferent to the condition. In support of his motion, Dr. Fahim submitted his deposition attesting that he never forced Williams to perform any exercise and instead told him to complete the exercises as instructed at the Orthopaedic Institute. Dr. Fahim also submitted his treatment notes dated two weeks before the second surgery; those notes evidence that Dr. Fahim had discussed with Dr. Young "the ability to educate patient on PT [physical therapy] in MD office" and that the two physicians had decided "that the patient will be educated on PT & the patient will be responsible to perform PT exercises in his cell."

Williams responded that Dr. Fahim had acted with deliberate indifference by disregarding Dr. Young's treatment plan. Williams submitted notes from the January 2010 consultation in which Dr. Young had recommended a second operation and postoperative therapy; those notes from Williams's chart state that Williams would need to "attend therapy or else the surgery would do no good." Because Dr. Young had intended that he receive physical therapy, Williams argued, Dr. Fahim should have authorized treatment by a physical therapist, rather than directing him to perform physical-therapy exercises on his own in his cell. To support his accusation that Dr. Fahim had forced him to perform exercises too early, Williams submitted his own deposition testimony that Fahim "would come to my room every day and check on me to make sure I am doing the exercises" and "had me doing that one ahead of time." Williams also contended—and Dr. Fahim did not dispute—that Dr. Young had instructed that the pin and sutures be removed two, not four, weeks after the second

surgery. In addition, Williams submitted Dr. Young's deposition testimony that the "prolonged" presence of a pin can cause joint stiffness to increase. Finally, Williams asserted that Dr. Fahim had refused to allow a third surgery even though, Williams insisted, Dr. Young had said that more surgery was "the only option" for repairing Williams's finger. In fact, though, Dr. Young actually said at his deposition that, after the second surgery, he had "felt that surgical reconstruction was the best approach."

The district court agreed with Dr. Fahim that Williams lacked evidence from which a jury reasonably could find deliberate indifference. Williams appeals, but Dr. Fahim asserts that this appeal is untimely because Williams filed his notice of appeal 49 days after the district court entered its order granting summary judgment. The court did not set out its judgment in a separate document, however, as required by Rule 58(a) of the Federal Rules of Civil Procedure. Thus the judgment is treated as having been entered 150 days after the order was entered on the court's docket, *see* FED. R. CIV. P. 58(c)(2)(B); FED. R. APP. P. 4(a)(7)(A)(ii); *Carter v. Hodge*, 726 F.3d 917, 918 (7th Cir. 2013), making Williams's appeal timely.

To avoid summary judgment, Williams needed to produce evidence showing that he suffered from an objectively serious medical condition to which Dr. Fahim was deliberately indifferent. *See Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). As a medical professional, Dr. Fahim would have been deliberately indifferent if his treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate" that he was not relying "on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982); *see Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008); *Collignon v. Milwaukee County*, 163 F.3d 982, 987–88 (7th Cir. 1998). Conduct that is akin to criminal recklessness—but not medical malpractice, negligence, or even gross negligence—violates the Eighth Amendment. *See Gamble*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

We agree with the district court's evaluation of the merits. Even with counsel's assistance, Williams did not submit evidence from which a jury reasonably could find that Dr. Fahim's decisions were based on anything other than the sound exercise of medical judgment. *See Sain*, 512 F.3d at 894–95; *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (explaining that patient's dissatisfaction with course of treatment is not evidence of deliberate indifference). The physical-therapy directions that Williams received at the Orthopaedic Institute show that even Dr. Young agreed that Williams could perform the necessary exercises on his own after receiving instruction. Dr. Young

testified that the delay in removing the sutures "caused no problems," and Williams conceded that the "sutures were removed without incident." The note from the Orthopaedic Institute indicates that the sutures would be removed 14 days after surgery, but it says nothing about the pin. Dr. Fahim did not challenge Williams's assertion that the pin also was to be removed 14 days after surgery, but that assertion is contradicted by the evidence: Dr. Young testified that he could not locate a record recommending that the pin be removed that soon, and in the administrative grievances that Williams submitted two weeks after the second surgery he consistently stated that the sutures were to be removed but the pin was to remain "for 4 to 6 weeks." Moreover, Williams cited no evidence showing that Dr. Fahim was responsible for scheduling the removal of the pin or sutures. *See Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012) (noting that liability under 42 U.S.C. § 1983 depends on personal involvement); *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (same). And though Dr. Fahim arguably was negligent in telling Williams to perform an exercise prematurely, a jury could not reasonably find deliberate indifference from that evidence. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) ("[A] difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference."). Finally, Williams cited no admissible evidence suggesting that a third surgery was required, much less that Dr. Fahim had denied the request for a reason other than medical judgment. The only admissible evidence on the matter is Dr. Young's testimony that a third surgery "was the best approach." But inmates are "not entitled to the best care possible," *Arnett*, 658 F.3d at 754, and no evidence suggests that Dr. Fahim's decision substantially departed from professional norms.

AFFIRMED.