**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 5, 2014
Decided August 13, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-2539

| | |
|---|---|
| BUNGE AGRIBUSINESS SINGAPORE PTE. LTD., *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:04 CV 06376 |
| DALIAN HUALIANG ENTERPRISE GROUP CO. LTD., *Defendant*. | James B. Zagel, *Judge*. |

Appeal of:

JIANFEI XU,
*Proposed Intervenor-Appellant.*

**O R D E R**

This appeal concerns the timeliness of Jianfei Xu's motion to intervene in this suit. Even though he was aware of the suit and the district court invited him to intervene, he sought to intervene only long after the district court had entered judgment. The suit was brought by Bunge Agribusiness to enforce foreign arbitral awards entered against Xu's employer, Dalian Hualiang Enterprise Group. The district court enforced the arbitral awards by ordering funds in an account under Xu's name turned over to Bunge. Nearly six years after that judgment, Xu filed a "cross-complaint" against Bunge, contending that it had fraudulently seized the funds. The district court treated that filing as a motion to intervene in the already-closed case and dismissed it as untimely. On appeal Xu argues that the judgment awarding the funds to Bunge is void and that his "cross-complaint" is timely because, even though he knew of the lawsuit, Bunge never served him with process. We dismiss this appeal to the extent that it seeks review of the underlying judgment (now more than seven years old); to the extent that it challenges the denial of Xu's attempt to intervene, we affirm the denial as a proper exercise of discretion because the motion to intervene was untimely.

Bunge and Dalian entered into two sales contracts in October 2003, each of which provides that Bunge would supply Dalian with soybeans and that any dispute arising between the parties would be settled by arbitration in London. Xu, a Dalian manager, signed the contracts on behalf of the company. Acting for Dalian, Xu later cancelled the contracts, and Bunge responded by seeking arbitration. While that proceeding was pending, a British court enjoined Dalian from "dispos[ing] of, deal[ing] with or diminish[ing] the value" of its assets worldwide "up to the value of US\$ 12.5 million."

Bunge quickly moved to enforce the injunction in the Northern District of Illinois under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208. The district court granted the motion in October 2004, and required anyone served with the order to "refrain from any conduct" assisting Dalian in violating the injunction. The order was served on Dalian (which never appeared in the action) and Harris Bank & Trust, which told the court that it held accounts for Refco, a financial-services company that did business with Xu. Refco appeared at a hearing in December 2004 and assured the court that it had frozen accounts that it held in the name of Xu.

The following month, in January 2005, Xu told Refco that it objected to the freeze order and wanted Refco to try to remove one of his accounts from the injunction's grip. In response, Refco asked Xu to provide it with information showing that the injunction was entered improperly or that Dalian does not hold an interest in the account. By letter, Xu replied that the account had not "traded with or financed" Dalian. Refco then intervened in the district court in May 2005 and, based on Xu's assertions, moved the court to release it from freezing accounts that it held in Xu's name. The district court, however, denied the motion in August 2005. It explained that "[d]espite Xu's unsworn assertions, I decline to find that the accounts 'frozen' by Refco are unrelated to Dalian." The court added, though, that "Xu may, of course, intervene in the case or in the underlying United Kingdom case to seek relief."

Despite the district court's invitation, Xu did not ask to intervene. With Xu uninvolved in the district court or underlying arbitration, the arbitration moved forward and began to wrap up the following summer. The arbitrators found Dalian in default on both contracts and awarded over $12 million in damages to Bunge. Eight months later, in March 2007, the district court entered judgment against Dalian and ordered $9,152.62 in the frozen Refco account bearing Xu's name, as well as funds in two other Refco accounts, turned over to Bunge.

Nearly six years after the entry of that judgment, in December 2012, Xu attempted to alter it by filing a "cross-complaint" against Bunge in the now-closed case. The filing alleged numerous state-law claims arising from Bunge's freezing and acquisition of the funds in the account bearing Xu's name, including fraud and misrepresentation, unjust enrichment, restitution, and emotional distress. Xu argued that the district court had jurisdiction under Rule 13 of the Federal Rules of Civil Procedure to adjudicate these claims.

Bunge moved to dismiss on three grounds. First, it contended that the court lacked subject-matter jurisdiction because the case was closed. Second, Bunge continued, even if there were jurisdiction, it was still far too late for Xu to seek to intervene in order to reopen the judgment and file cross-claims. Third, Bunge said, each of Xu's claims was barred by the applicable statute of limitations. Xu responded that he was a "real party in interest" to the litigation under Rule 17; Bunge had "unfairly deprived" him of his "day in court" by failing to join him as a necessary party under Rule 19; and Bunge had not served him with process, which rendered the judgment void. His lateness in seeking relief was justified, Xu continued, because "it was

reasonable" to "trust the integrity of this Court that the freezing of his account would be eventually lifted" since Bunge had never joined him as a party or served him.

Accepting Bunge's arguments, the district court dismissed the filing with prejudice. Upon entering a final judgment in this case six years earlier, the court explained, it lost jurisdiction to consider related issues unless authorized by a statute or rule; but, the court said, none of the rules Xu cited gave it such authority. Nor could Xu join the litigation or seek relief from the judgment under Rules 24 and 60(b) so long after the court had invited him to intervene and entered judgment. Even if Xu could intervene, the court continued, all of his claims were barred by statutes of limitations.

Xu appeals, objecting to both the judgment entered in March 2007 and to the dismissal of his "cross-complaint" in June 2013. He reiterates his arguments to the district court, emphasizing that because he was never served with process, the judgment is void, his tardiness is excused, and his claims are timely.

Before moving to the merits, this court must assure itself of jurisdiction over this appeal. To the extent that Xu wishes to challenge the March 2007 judgment, this appeal—filed more than six years after the judgment was reached—is untimely, and thus this court lacks jurisdiction to review it. *See* FED. R. APP. P. 4(a)(1)(A); *Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement."); *Carter v. Hodge*, 726 F.3d 917, 919 (7th Cir. 2013). Moreover, Xu is not a party to that judgment, and generally only parties to a judgment may appeal it. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *Gautreaux v. Chicago Hous. Auth.*, 475 F.3d 845, 850 (7th Cir. 2007). But this appeal is timely with respect to, and this court has jurisdiction to review, the recent order dismissing the "cross-complaint." This court can construe that complaint as a request to intervene, even though it was filed after judgment, because the question whether one may intervene logically precedes whether one may do so to reopen a judgment. *See United States v. Griffin*, 782 F.2d 1393, 1399 (7th Cir. 1986). And as the putative intervenor, Xu may appeal the denial of a motion to intervene. *See Marino*, 484 U.S. at 304; *Felzen v. Andreas*, 134 F.3d 873, 874 (7th Cir. 1998).

The next question is whether Xu had standing to intervene; if not, he also lacks standing to appeal the dismissal of that request. *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1022 (7th Cir. 2006). Rule 24 of the Federal Rules of Civil Procedure provides for intervention by right and by permission. Because Xu's interest in the frozen funds was already represented by Refco, Xu may lack grounds to intervene by right. *See* FED. R. CIV. P. 24(a)(2). But Rule 24(b)(1)(B) permits a person to intervene who "has a claim

or defense that shares with the main action a common question of law or fact." Xu's claims—that Bunge improperly froze and acquired the funds in his account—share a common question with the underlying action: Did Xu hold those funds for Dalian's benefit? Thus, Xu had standing to intervene permissively, and this court may review the district court's refusal, on the ground of untimeliness, to permit him to do so.

Although Xu raises a handful of arguments on appeal, none can get off the ground because the district court did not abuse its discretion in ruling that Xu's request to intervene was untimely. *See* FED. R. CIV. P. 24(a), (b)(1) (requiring "timely motion"). This court reviews a district court's timeliness determination for an abuse of discretion. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797–98 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1026 (2014). In assessing the exercise of discretion, this court examines several factors: the lapse of time between when Xu learned that the suit could affect his interests and when he sought to join the litigation, "the prejudice caused to the original parties by the delay" and "to the intervenor if the motion is denied," as well as "any other unusual circumstances." *Id*.

We first address the lapse of time and conclude that this factor strongly supports the district court's decision. Xu learned about the underlying litigation at the very latest in February 2005 when Refco informed him that the court had ordered his account frozen. He should have realized that his interests were threatened and that he needed to intervene by August 2005. That is when the court denied Refco's request to unfreeze the account and invited Xu to intervene. But Xu did nothing for more than seven years. This delay renders his attempted intervention untimely. *See Grochocinski*, 719 F.3d at 797–98 (upholding denial of motion to intervene filed two-and-a-half years after person should have realized that his interest was at issue); *Larson v. JPMorgan Chase & Co.*, 530 F.3d 578, 583–84 (7th Cir. 2008) (upholding "refus[al] to allow belated intervention by a sophisticated litigant with a large stake who had no good excuse for failing to seek intervention (or bringing its own suit) years ago"); *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002) (upholding denial of motion to intervene filed after 10-month delay); *United States v. British Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238–39 (D.C. Cir. 2006) (upholding denial of motion to intervene filed 6 to 12 months after group had "reasonable expectation" that its interest was at stake).

Xu replies that his delay is excusable because, despite his knowledge of the suit, he was never formally served with process. But a person may seek to intervene precisely because he has *not* been served with process in a suit that he nevertheless knows threatens his interests; if the person has already been served, he has no need to

intervene. *See S.E.C. v. Ross*, 504 F.3d 1130, 1150 (9th Cir. 2007) (recognizing that intervention "puts the intervenor in the position he would have been in had the plaintiff (or another party) properly named him to begin with").

Next is the issue of prejudice, and this factor too supports the district court's decision. The district court did not quantify the prejudice to Bunge if the judgment were reopened and Xu pursued his claims. But the court did not have to do so because the closure of the case, which occurred 19 months after the court had invited Xu to intervene, is itself sufficient evidence of prejudice to Bunge. This court has upheld a finding of prejudice where permitting intervention would cause "additional delay in resolving this case, which had reached a final judgment." *See Grochocinski*, 719 F.3d at 798. By contrast to the prejudice to Bunge in reopening a long-closed case, any prejudice to Xu is slight: through Refco, Xu already has received an opportunity to present his position; the court considered Xu's arguments and rejected them on the merits. Xu has not explained why the result would likely be different a second time around.

Finally, we consider the issue of unusual circumstances. Xu contends that "it was reasonable" for him "to trust" that, because he was a nonparty, the court would eventually unfreeze the account. But even if it were reasonable for Xu to believe that, before judgment, the court would unfreeze the funds, that belief does not justify his nearly six-year delay in seeking relief *after* the court entered final judgment and ordered the funds turned over to Bunge. With all factors thus disfavoring Xu, we conclude that the district court's denial of his request to intervene was not an abuse of discretion.

Accordingly, we DISMISS the appeal for lack of jurisdiction to the extent that Xu seeks review of the underlying judgment and AFFIRM the order dismissing the "cross-complaint."